IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 19, 2002

## WILLIAM BRIAN BELSER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 70981      Ray L. Jenkins, Judge**

_____

**No. E2001-01541-CCA-R3-CD**
**July 9, 2002**
_____

The petitioner, William Brian Belser, appeals the trial court's denial of his petition for post-conviction relief. In this appeal, the petitioner asserts that he was denied the effective assistance of counsel at trial. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, William Brian Belser.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Robert L. Jolley, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

The petitioner was convicted of second degree murder for the 1993 shooting death of Brian Shaver. Because the trial court failed to instruct the jury on the lesser included offense of voluntary manslaughter, this court reversed the petitioner's conviction and remanded the cause for a new trial. See State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996). On retrial, the petitioner was again convicted of second degree murder and was sentenced to a term of 25 years. The conviction and sentence were affirmed by this court. See State v. William Brian Belser, No. 03C01-9803-CR-00110 (Tenn. Crim. App., at Knoxville, Feb. 25, 1999). The petitioner then filed a timely petition for post-conviction relief alleging that his trial counsel was ineffective for advising him against testifying on his own behalf; failing to adequately consult with him prior to trial; failing to call Angela Barbeau, who had testified at the first trial, as a witness in the second trial; and failing to effectively cross-examine witnesses for the state.

At the evidentiary hearing, the petitioner testified that his trial counsel, Thomas Slaughter, consulted with him for only seven hours prior to trial. The petitioner explained that prior to his

second trial, he was incarcerated in a federal penitentiary in Atlanta. According to the petitioner, his trial counsel visited him once in Atlanta for approximately two hours. After the petitioner was transferred to Knoxville for trial, trial counsel visited him twice for a total of four or five hours.

The petitioner also claimed that, while he expected to testify on his own behalf as he had at the first trial, his trial counsel advised him against testifying. According to the petitioner, trial counsel believed that the state, at the close of its proof, had failed to demonstrate the petitioner's guilt beyond a reasonable doubt and that the best course of action would be to present no proof. The petitioner stated that he agreed with his trial counsel's assessment of the case at that point, explaining that they both believed that the state had, at most, established a voluntary manslaughter. The petitioner recalled that his trial counsel informed him that if he chose to testify, he could be impeached with the prior inconsistent statements he gave to police after his arrest, his testimony at the first trial, and the two felony convictions he had received since the first trial. The petitioner stated that while he wanted to testify, he left the decision up to his trial counsel.

Finally, the petitioner claimed that his trial counsel was ineffective for failing to cross-examine certain witnesses for the state with their reported testimony from the first trial. According to the petitioner, even though he had pointed out to his trial counsel inconsistencies in the testimony of several witnesses, counsel failed to question the witnesses regarding the inconsistencies. Trial counsel explained that the inconsistencies referred to by the petitioner were not damaging to the defense. It was his view that he adequately cross-examined each of the state's witnesses.

Trial counsel testified at the evidentiary hearing that because he had access to the record from the petitioner's first trial, it was not necessary that he consult with the petitioner for a greater length of time. While acknowledging that he would have liked more time to consult with the petitioner prior to trial, he contended that the brevity of their pretrial contact did not adversely affect his ability to effectively represent the petitioner. Trial counsel also testified that he advised the petitioner against testifying at trial due to his prior convictions. He expressed concern that the petitioner's testimony at the first trial was inconsistent with a theory of self-defense or defense of a third party, which was the theory that was relied on at the second trial. Trial counsel explained that the petitioner had testified at the first trial that he was neither angry at the victim nor fearful of him on the night of the shooting. Moreover, the petitioner had demonstrated to the jury in the first trial how he had held the gun with both hands and used the laser sight to aim at the victim, testimony that trial counsel believed was particularly damaging. Trial counsel further stated that while it was difficult to present a theory of self-defense without the petitioner's testimony, he believed that the testimony would have been more detrimental than helpful. Trial counsel specifically denied refusing the petitioner the right to testify. He conceded that some of his clients had taken the stand against his advice. Trial counsel could not recall precisely the exchange he had with the petitioner, but did remember that the petitioner did not insist on taking the stand.

The petitioner argued that his trial counsel was ineffective for failing to call Angela Barbeau as a witness. According to the petitioner, Ms. Barbeau was the only witness to the shooting. He stated that he had killed the victim to protect Ms. Barbeau. The petitioner conceded that Ms.

Barbeau had given numerous, inconsistent statements regarding the shooting but insisted that her testimony supported his theory of defense. Trial counsel testified that he did not call Ms. Barbeau as a witness because she had been a terrible witness at the petitioner's first trial. He contended that her testimony did not support either a theory of defense of a third person or an accidental shooting, which was the petitioner's theory of defense at the first trial.

At the conclusion of the hearing, the trial court denied the petition for post-conviction relief, finding that the petitioner had failed to prove his allegations by clear and convincing evidence. First, the trial court specifically accredited the testimony of trial counsel and determined that he had not deprived the petitioner of his right to testify. Secondly, the trial court determined that trial counsel's decision to present no proof qualified as a sound trial strategy. Finally, the trial court found that trial counsel's decision not to cross-examine the state's witnesses with minor inconsistencies from the first trial was a tactical decision.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Under our statutory law, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

As to the petitioner's primary complaint, that he was deprived of the opportunity to testify, it is well established that a criminal defendant has a constitutional right to give testimony under both the state and federal constitutions. Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). Article I, section 9 of the Tennessee Constitution has been interpreted to require that "in all criminal prosecutions the accused has the right to testify as a witness in his own behalf and to be represented by counsel." Id. (citing State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976)). In Rock v. Arkansas, 483 U.S. 44, 50 (1987), the United States Supreme Court declared that the right of a criminal defendant to testify in his own behalf was essential to the due process of law. Because the right to testify is fundamental, it may only be waived by the defendant. Momon, 18 S.W.3d at 161 (citing Jones v. Barnes, 463 U.S. 745 (1983); State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998); and Vermilye v. State, 754 S.W.2d 82, 88 (Tenn. Crim. App. 1987)).

In Momon, our supreme court held that as a procedural safeguard, the waiver of the defendant's right to testify should be attained through a voir dire of the defendant in open court. Momon, 18 S.W.3d at 162. The court noted, however, that "neither the right to testify discussed herein, nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively applied." Id. at 162-63. Moreover, our high court stated that the safeguards announced in Momon were prophylactic in nature and not constitutionally required. Id.

The petitioner's second trial occurred in 1997, some two years before the supreme court's decision in Momon. At that time, a voir dire of the defendant regarding his waiver of the right to testify was not required. Prior to the supreme court's holding in Momon, a petitioner's claim that his counsel prevented him from testifying in his own behalf was treated like any other ground asserted for a claim of ineffective assistance of counsel. See, e.g., Shone King v. State, No. 01C01-9709-CR-00408 (Tenn. Crim. App., at Nashville, Dec. 30, 1998).

Here, the trial court accredited the testimony of the petitioner's trial counsel and determined that the petitioner agreed to follow counsel's advice against testifying in his own behalf. The petitioner acknowledged that trial counsel explained his right to testify but advised him against taking the stand due to the likelihood that he would be impeached with his prior inconsistent statements. Further, he had been convicted of two crimes since the first trial. It is undisputed that the petitioner had committed two felonies, including the illegal purchase of a weapon, while awaiting his first trial. In addition, the petitioner's testimony at his first trial was not consistent with the theory of defense presented at the second trial. While the defendant contended that he shot the victim in self-defense, he had demonstrated to the jury at the first trial how he held the gun with both hands and used the laser sight to aim at the victim. Under these circumstances, counsel's advice that the petitioner refrain from taking the stand did not render his performance deficient. Moreover, the petitioner failed to show that counsel unilaterally deprived him of the right to testify. See Gregory Morgan v. State, No. 03C01-9611-CR-00404 (Tenn. Crim. App., at Knoxville, Jan. 15, 1999) (holding that petitioner was not entitled to post-conviction relief where his trial counsel advised him against, but did not prohibit him from, testifying in his own behalf).

While the petitioner asserts that the outcome of his trial would have been different if Ms. Barbeau had testified, he did not call her as a witness at the post-conviction hearing or make any assertion of what her testimony might have been. It was uncontroverted that Ms. Barbeau's testimony at the petitioner's first trial was more damaging than favorable to the defense:

> On cross-examination, Ms. Barbeau admitted threatening to have the victim's "ass kicked." She also conceded that after she argued with the victim sometime earlier, an acquaintance of the defendant's had threatened to beat the victim. Ms. Barbeau also acknowledged several inconsistencies between her trial testimony and her pretrial statements to police. She conceded that the defendant was angry when they went to the victim's condo that evening and that she had overheard the defendant make other threats against the victim.

Belser, 945 S.W.2d at 781. Under these circumstances, trial counsel's decision not to call Ms. Barbeau as a witness was a sound tactical one and cannot serve as a basis for post-conviction relief. See Adkins, 911 S.W.2d at 347.

Finally, the petitioner has failed to show that he was prejudiced, in any way, by the cross-examination of the witnesses for the state or how any further preparation may have caused a different result. In summary, the evidence does not preponderate against the trial court's findings.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE